IN THE UNITED STATES COURT OF FEDERAL CLAIMS
No. 13-457C

(Filed: December 4, 2013)

| | |
|---|---|
| TAMARA BARRY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | Claims brought under the Fair Labor Standards Act, 29 U.S.C. § 216(b); motion to transfer based upon asserted absence of jurisdiction in this court; *Bormes* distinguished; *King* followed |

Jacob Y. Statman, Snider & Associates, LLC, Baltimore, Maryland, for plaintiffs. With him on the brief was Jason I. Weisbrot, Snider & Associates, LLC, Baltimore, Maryland.

Martin M. Tomlinson, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Stuart F. Delery, Assistant Attorney General, Bryant G. Snee, Acting Director, and Reginald T. Blades, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.

**ORDER**

LETTOW, Judge

On July 5, 2013, plaintiffs ("the Barry plaintiffs"), past or present employees of the Department of Homeland Security, brought claims in this court under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). Rather than answer and defend against the plaintiffs' claims on the merits, the government has asserted that this court lacks jurisdiction to hear FLSA claims and has moved to transfer the case to the United States District Court for the District of Nebraska, pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims and 28 U.S.C. § 1631.[1]

---

[1]Section 1631 provides:

> Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any

## I. BACKGROUND

The Barry plaintiffs are or were employees of the U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services, Office of Fraud Detection and National Security.  Compl. at 3, ¶ 2.  The Barry plaintiffs allege that they were wrongly classified as exempt from the FLSA prior to February 12, 2012 and request back pay at the appropriate rate for any and all hours worked in excess of eight hours per day or forty hours per week, as well as declarative relief.  Compl. at 6.  On February 12, 2012, the government reclassified the Barry plaintiffs as non-exempt for purposes of the FLSA.  Compl. at 3, ¶¶ 3-4.  According to the Barry plaintiffs, they "did not have any change in duties prior to or subsequent to the Agency's conversion of them from exempt to non-exempt," and their positions are consistent with duties that are non-exempt.  Compl. at 3, ¶¶ 5, 7.  Subsection 207(a) of the FLSA, codified at 29 U.S.C § 207(a), requires that a covered employer compensate its non-exempt employees at a rate not less than one and one-half times the regular rate of pay for any hours worked in excess of forty hours per week.  29 U.S.C. § 207(a)(1).  The Barry plaintiffs claim that they were wrongly designated as exempt prior to February 12, 2012 and seek damages in the amount of overtime pay wrongfully withheld under Subsection 207(a).  *See* Compl. at 4-5, ¶¶ 3, 6.  The Barry plaintiffs assert that this court has jurisdiction pursuant to statutes that include 29 U.S.C. §§ 201 – 219, 28 U.S.C. § 1331, 28 U.S.C. § 1337, 28 U.S.C. § 1346(a), and 28 U.S.C. § 1491.  Compl. at 2.[2]

On September 5, 2013, the government filed a motion to transfer the case to the United States District Court for the District of Nebraska, challenging this court's subject matter jurisdiction over the Barry plaintiffs' claims.  *See* Def.'s Mot. to Transfer ("Def.'s Mot.").  The Barry plaintiffs responded on October 2, 2013, *see* Pl.'s Resp. in Opp'n to Def.'s Mot. to Transfer ("Pl.'s Opp'n"), and the government replied on October 31, 2013, *see* Def.'s Reply to Pl.'s Resp. to Def.'s Mot. to Transfer ("Def.'s Reply").  The motion is ready for decision.

## II. ANALYSIS

This jurisdictional dispute rests on the relationship between the Tucker Act, the principal jurisdiction-granting statute applicable to this court, and the FLSA, the statute providing the substantive right the Barry plaintiffs seek to enforce.

---

other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C § 1631

[2]The Barry plaintiffs refer to 28 U.S.C. § 1491 as a basis for relief, but do not directly state that it is the jurisdictional foundation for their action.  The government correctly notes that most of the statutes that plaintiffs do cite as bases for jurisdiction are inappropriate, including 28 U.S.C § 1331, 28 U.S.C. § 1337, and 28 U.S.C. § 1346(a)(2).

## A. The Tucker Act

The Tucker Act, codified at 28 U.S.C. § 1491(a)(1), provides this court with jurisdiction over claims for monetary relief against the United States "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). Although constituting a grant of jurisdiction, the Tucker Act does not create a substantive legal right. *See United States v. Mitchell,* 445 U.S. 535, 538 (1980) (citing *United States v. Testan,* 424 U.S. 392, 398 (1976)). Claimants must also identify a separate source of substantive law creating a right to money damages. *Id.* at 538-39. The Tucker Act and its predecessors "open[ed] a judicial avenue for certain monetary claims against the United States." *United States v. Bormes*, _ U.S. _, _, 133 S. Ct. 12, 17 (2012). Prior to enactment of the Tucker Act, many laws imposing monetary obligations on the federal government provided no mechanism of enforcement, leaving claimants individually to petition Congress for redress. *See id.*, _ U.S. at _ & n.3, 133 S. Ct. at 17 & n.3. Sovereign immunity barred federal district courts from assuming jurisdiction under the federal-question jurisdictional statute, 28 U.S.C. § 1331. *See, e.g.*, *Berman v. United States*, 264 F.3d 16, 20 (1st Cir. 2001) ("General jurisdiction statutes such as [Section 1331] do not waive sovereign immunity and therefore cannot be the basis for jurisdiction over a civil action against the federal government."); *Reed v. Reno*, 146 F.3d 392, 397-98 (6th Cir. 1998) (holding that Section 1331 "does not by its own terms waive sovereign immunity" over claims for money judgments against the federal government) (quoting *Sibley v. Ball*, 924 F.2d 25, 28 (1st Cir. 1991), *aff'd upon transfer*, 944 F.2d 913 (Fed. Cir. 1991) (unpublished opinion, aff'd pursuant to Fed. Cir. R. 36)); *Gochnour v. Marsh*, 754 F.2d 1137, 1138 (5th Cir. 1985) ("Section 1331 cannot be the basis of monetary relief since there is no waiver of sovereign immunity.").

As originally written, the Tucker Act gave this court's predecessor, the Court of Claims, jurisdiction to "hear and determine" any claim for monetary relief

> founded upon the Constitution of the United States or any law of Congress . . . or upon any regulation of an Executive Department, or upon any contract . . . with the Government of the United States, or for damages, liquidated or unliquidated, in cases not sounding in tort, in respect of which claims the party would be entitled to redress against the United States either in a court of law, equity, or admiralty *if the United States were suable*.

Act of Mar. 3, 1887 § 1, 24 Stat. 505 (emphasis added); *see also Bormes*, _ U.S. at _, 133 S. Ct. at 18. It served as a general waiver of sovereign immunity for the specified claims to be heard in the Court of Claims.[3] The Supreme Court described the Tucker Act as "suppl[ying] the missing ingredient for an action against the United States for the breach of monetary obligations not otherwise judicially enforceable." *Bormes*, _ U.S. at _, 133 S. Ct. at 18. The Tucker Act is not materially different in its present form.

---

[3]Section 2 of the 1887 Act provided for concurrent jurisdiction in the district courts for claims less than $1,000 dollars. That threshold has since been raised to $10,000. *See* 28 U.S.C. 1346(a)(2) (commonly denominated the "Little Tucker Act").

## B. Understanding *Bormes*

The government presents the question whether the Tucker Act's general grant of jurisdiction to this court is wholly displaced by the remedial scheme set out in the FLSA. *See* Def.'s Mot. at 7. The government avers that after the Supreme Court's decision in *Bormes*, the Tucker Act's grant of jurisdiction is necessarily displaced by a statute creating a substantive legal right and also providing a detailed remedial scheme. Def.'s Mot. at 2, 7. As the government would have it, in such a situation, this court would be deprived of subject matter jurisdiction unless jurisdiction was specifically granted to it by the statute providing the substantive cause of action. The government contends that the FLSA presents such a situation because it "establishes liability, a cause of action, a measure of damages, and an applicable statute of limitations. . . . [T]he liability that Congress intended to create can be determined from only the text of the FLSA, and the Tucker Act is displaced." *Id.* at 2.

The Barry plaintiffs dispute the government's reading of *Bormes*, contending that *Bormes* calls for displacement when a statute waives sovereign immunity and specifies a forum other than this court within a statute's detailed remedial scheme. *See* Pl.'s Opp'n at 3-4. But, they argue, "the Supreme Court did not . . . hold that any statute containing a 'detailed remedial scheme' necessarily eliminates the C[ourt] [of] F[ederal] C[laims] from hearing cases under that scheme; rather, the terms of the detailed remedial statute itself govern." *Id.* at 3. Specifically, here they point to the detailed remedial scheme of the FLSA, which authorizes judicial power to be exercised by "any [f]ederal or [s]tate court of competent jurisdiction." *Id.* at 4 (quoting 29 U.S.C. § 216(b)). This court, the Barry plaintiffs assert, is undoubtedly a court of competent jurisdiction. *Id.* at 3.[4]

In *Bormes*, the plaintiff originally brought suit in the District Court for the Northern District of Illinois, alleging that the government violated the Fair Credit Reporting Act ("FCRA"). The government moved to dismiss for lack of subject matter jurisdiction based upon sovereign immunity. *See Bormes v. United States*, 638 F. Supp. 2d 958, 959-60 (N.D. Ill. 2009). The plaintiff had relied on both the Little Tucker Act, 28 U.S.C. § 1346(a)(2), and the FCRA's own forum provision, which provided for suit "in any appropriate United States district court, without regard to the amount in controversy, or in any other court of competent jurisdiction," 15 U.S.C. § 1681p; *Bormes*, 638 F. Supp. 2d at 960 n.1, 961. The district court dismissed the complaint, holding that the language of the FCRA did not "unequivocally express[]" a waiver of sovereign immunity for the plaintiff's claims. *Bormes*, 638 F. Supp. 2d at 961-62 (citing, *inter alia*, *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33-34 (1992)).[5]

---

[4]The Barry plaintiffs extend this argument to contend that the Court of Federal Claims has exclusive jurisdiction of FLSA claims over $10,000. Pl.'s Opp'n at 5-6.

[5]The district court treated the government's motion as having been filed under Fed. R. Civ. P. 12(b)(6) and not Fed. R. Civ. P. 12(b)(1), after determining that sovereign immunity does not divest district courts of jurisdiction but rather bears on the court's ability to provide relief. *Bormes*, 638 F. Supp. 2d at 960. The court did not consider the alternative basis for jurisdiction under the Little Tucker Act after finding that it had jurisdiction under the FCRA itself. *See id.* at 960 & n.1.

The plaintiff appealed to the Federal Circuit, and the government filed a motion to transfer to the Court of Appeals for the Seventh Circuit.  *See Bormes v. United States*, No. 2009-1546, 2010 WL 331771, at *1 (Fed. Cir. Jan. 27, 2010).  A motions panel for the Federal Circuit denied the motion to transfer because the plaintiff's claim could properly be based on the Little Tucker Act, requiring that appeals go to the Federal Circuit.  *Id.* at *2.  A later panel then reversed the district court's decision to dismiss and held that the FCRA was properly considered a "money-mandating statute that supported jurisdiction under 28 U.S.C. § 1346(a)(2)[, the Little Tucker Act]."  *Bormes v. United States*, 626 F.3d 574, 576 (Fed. Cir. 2010).  In so deciding, the court held it did not need to locate the government's waiver of sovereign immunity in the FCRA because the jurisdictional provisions of the Little Tucker Act waived the government's sovereign immunity for claims based on any money-mandating law of Congress.  *Id.* at 578.  The court of appeals combined the damages provisions of the FCRA with the waiver of sovereign immunity from the Little Tucker Act to find that the plaintiff could properly sue the federal government for violations of the FCRA.  *See Bormes*, _ U.S. at _, 133 S. Ct. at 16.

The Supreme Court first focused on sovereign immunity, reiterating that "[s]overeign immunity shields the United States from suit absent a consent to be sued that is 'unequivocally expressed.'"  *Bormes*, _ U.S at _, 133 S. Ct. at 16 (internal citations omitted).  It reminded that sovereign immunity is a protection that may not be lightly assumed away by the courts and that the Tucker Act was adopted to clarify that the United States intended to waive its right to sovereign immunity in certain situations where waiver could not be implied from many money-mandating statutes themselves.  The broad waiver of sovereign immunity located in the Tucker Act, however, does not apply when the statute providing the cause of action provides a remedial scheme with a divergent jurisdictional avenue.  *See id.*, _ U.S. at _, 133 S. Ct. at 18 ("[A] 'precisely drawn, detailed statute pre-empts more general remedies.'") (quoting *Hinck v. United States*, 550 U.S. 501, 506 (2007))).  The Tucker Act may be called upon when "'[n]o special remedy has been provided' to enforce a payment to which the claimant was entitled."  *Id.*, _ U.S. at _, 133 S. Ct. at 18 (quoting *United States v. Kaufman*, 96 U.S. 567, 569 (1878)).  Congress need not explicitly preclude Tucker Act jurisdiction to negate its applicability: "Where a specific statutory scheme provides the accoutrements of a judicial action, the metes and bounds of the liability Congress intended to create can only be divined from the text of the statute itself."  *Id.*, _ U.S. at _, 133 S. Ct. at 19.

In naming the federal district courts as a proper venue, the FCRA provides a complete judicial remedial scheme that eliminates any need to resort to the Little Tucker Act to identify a judicial avenue for enforcement.  *See Bormes*, _ U.S. at _, 133 S. Ct. at 19.  Because there was no need for resort to the Little Tucker Act, it was wholly displaced as a basis for such a claim.  Consequently also, the Tucker Act's waiver of sovereign immunity could not be applied to FCRA claims, and those claims could not be heard in the Court of Federal Claims.  The Supreme Court remanded the case to the Seventh Circuit for determination of whether the remedial scheme Congress created in the FCRA contained a waiver of sovereign immunity.  *Id.*, _ U.S. at _, 133 S. Ct. at 20.

## C. Jurisdiction under the FLSA after *Bormes*

A recent decision from this court, *King v. United States,* 112 Fed. Cl. 396 (2013), rejects the government's reading of *Bormes* to affect this court's jurisdiction over FLSA cases.  In *King*, the court faced an almost identical motion by the government to transfer an FLSA claim to a district court due to this court's supposed lack of subject matter jurisdiction following *Bormes*. *King*, 112 Fed. Cl. at 398.  The court asked two questions to determine whether this court retains jurisdiction when a statute contains its own remedial scheme: (1) whether sovereign immunity has been waived by the statute itself, and (2) where Congress intended that claims be heard.  *Id.* at 401.  The court held that the government "improperly conflate[d] the issue of sovereign immunity waiver with the issue of proper forum in every case involving a detailed remedial federal statute." *Id.* at 399.  The court explained that "the specific issue decided in *Bormes* was that the Tucker Act could not replace FCRA's 'detailed remedial scheme' to provide, in the first instance, a waiver of sovereign immunity." *Id.* (quoting *Bormes*, _ U.S. at _, 133 S. Ct. at 15).  Accordingly, where a statute provides a comprehensive remedial scheme that includes an attendant waiver of sovereign immunity, the Court of Federal Claims may still have jurisdiction through the Tucker Act "if Congress so intended under the terms of the statute." *Id.*  The court determined that Congress did so intend for the FLSA by using the phrase "any [f]ederal or [s]tate court of competent jurisdiction."  *Id.* at 400 (quoting 29 U.S.C. § 216(b)).

The court in *King* also recognized Federal Circuit precedent holding that FLSA claims in excess of $10,000 are exclusively the province of the Court of Federal Claims.  *King*, 112 Fed. Cl. at 400 (citing *Saraco v. United States*, 61 F.3d 863, 865-66 (Fed. Cir. 1995) (concluding that for claims under the FLSA exceeding $10,000, district courts no longer have concurrent jurisdiction under the Little Tucker Act)).  This court is unaware of any court disputing the exclusivity of jurisdiction in this court of FLSA claims over $10,000.  At least one district court has recently applied *Saraco* to give effect to this exclusive jurisdiction.  *See Moore v. Donley*, No. CIV-12-1003-HE, 2013 WL 3940898, at *2 (W.D. Okla. July 30, 2013) (granting government's motion to transfer plaintiffs' FLSA claim to the Court of Federal Claims where plaintiffs failed to state a claim amount or waive recovery in excess of $10,000). [6]

---

[6]The continuing validity of *Saraco* could be questioned, however, after the Supreme Court's holding in *Bormes*.  In *Bormes*, the Supreme Court held that the statutory text of the FCRA was sufficient to provide the district courts with jurisdiction, independent of the Tucker Act, and so the Tucker Act did not apply.  *Bormes*, _ U.S. at _, 133 S. Ct. at 19 ("Without resort to the Tucker Act, FCRA enables claimants to pursue in court the monetary relief contemplated by the statute.").  The language of the forum provision in the FCRA, which the Supreme Court interpreted as a jurisdictional grant, provides for jurisdiction in "any appropriate United States district court . . . or in any other court of competent jurisdiction."  15 U.S.C. § 1681p.  The forum provision in the FLSA is similar, but omits any reference to district courts, authorizing claims to be heard by "any [f]ederal or [s]tate court of competent jurisdiction."  29 U.S.C. § 216(b).  Whether this allows federal district courts to exercise jurisdiction over FLSA claims under 28 U.S.C. § 1331 is an open question.  *Saraco* interpreted the FLSA *forum* provision *not* to be an independent jurisdictional grant, thus relying on the Tucker Act and the Little Tucker Act for jurisdiction of FLSA claims.  *Saraco*, 61 F.3d at 865-66.

This analysis in *King* has been adopted in several subsequently decided cases in this court.  *See, e.g.*, *Farzam v. United States*, No. 13-075C, 2013 WL 5819273, at *1 (Fed. Cl. Oct. 29, 2013); *Tallacus v. United States*, _ Fed. Cl. _, _, No. 10-311C, 2013 WL 5665260, at *5 (Fed. Cl. Oct. 17, 2013) (finding that the FLSA contains a waiver of sovereign immunity and that jurisdiction in the Court of Federal Claims is contemplated by the statute); *Frost v. United States*, No. 13-050C (Fed. Cl. Sept. 10, 2013) (order denying defendant's motion to transfer FLSA claim); *Miller v. United States*, No. 11-766C (Fed. Cl. Sept. 24, 2013) (same); *Federal Air Marshall (FAM) 5001 v. United States*, No. 11-613C (Fed. Cl. Sept. 30, 2013) (same).

This court reaches the same result.  First, unlike the FCRA, it is well-settled that the FLSA contains an express waiver of sovereign immunity distinct and separate from the Tucker Act.  *See El-Sheikh v. United States*, 177 F.3d 1321, 1323-24 (Fed. Cir. 1999).  Second, again unlike the FCRA, the forum provision of the FLSA does not grant jurisdiction to any specified court, providing only that jurisdiction is appropriate in any "competent" state or federal court. 29 U.S.C. § 216(b).  This reference to forum is sufficiently wide-ranging to encompass that enabled by the Tucker Act.  *See El-Sheikh*, 177 F.3d at 1324.  Unlike the FCRA, the FLSA thus *requires* resort to another statute to determine whether a court is "competent."  There is no reason to believe Congress intended to exclude the Tucker Act from the possible alternatives. The FLSA is not similar to other statutes that have been interpreted to foreclose jurisdiction in the Court of Federal Claims, including the FCRA.  *See, e.g.*, *Hinck*, 550 U.S. at 503 (holding that the Tax Court is the exclusive forum for judicial review of the Secretary's decision not to abate interest under 26 U.S.C. § 6404(e)(1)); *United States v. Fausto*, 484 U.S. 439, 455 (1988) (holding that the Civil Service Reform Act created a complete remedial scheme, precluding claims in the Claims Court under the Back Pay Act); *United States v. Erika, Inc.*, 456 U.S. 201, 206 (1982) (holding that agency determinations regarding Medicare Part B reimbursements are final and unreviewable by the Court of Claims).  Instead, juridically, the FLSA is expressly open-ended.  Congress never excluded FLSA claims from this court's purview, either expressly or impliedly.  This court is appropriately a "competent" court within the terms of the FLSA when jurisdiction is invoked under the Tucker Act.  In short, this court has jurisdiction over the Barry plaintiffs' claims, and transfer under 28 U.S.C. § 1631 is inappropriate.

### III. CONCLUSION

For the reasons stated, Defendant's motion is DENIED.

It is so ORDERED.

s/ Charles F. Lettow
Charles F. Lettow
Judge

---

Although the Barry plaintiffs claim that the Court of Federal Claims would have exclusive jurisdiction over this case because the individuals' claims are over $10,000, a decision that this court has jurisdiction under the Tucker Act suffices to negate the motion to transfer without also deciding whether a district court may also have jurisdiction under 28 U.S.C. § 1331 or another statute.  *See* Pl.'s Opp'n at 5-6.